United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TIMOTEO C. PLANCARTE,

Petitioner,

v.

GARY SWARTHOUT, Warden,

Respondent.

_____/

No. C 12-3304 RS

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions.  For the reasons set forth
below, the petition will be DENIED.

## BACKGROUND

In 2009, a Santa Clara County Superior Court jury found petitioner guilty of first degree
robbery, in concert, in an inhabited place; and first degree robbery in an inhabited building.  The
jury found petitioner not guilty of kidnapping to commit robbery and not guilty of kidnapping a
child under age 14, but guilty of the lesser included offense of false imprisonment on both
counts.  Both the Sixth Appellate District and the Supreme Court of California denied Petitioner

relief on direct review, affirming his convictions.  The Supreme Court of California also denied review of his petition for writ of habeas corpus.  This federal habeas petition followed.

Evidence presented at trial showed that in 2008, petitioner and four co-conspirators broke into the house rented by Bladimir Maraz and his family, believing Maraz was a drug dealer. Petitioner and his co-conspirators also broke into the attached garage, which was a separate unit rented by Erendira Jiminez and her family.  The intruders wore dark clothing, face coverings, gloves, and carried weapons ranging from knives to guns.  The intruders terrorized the Maraz family, restraining them with duct tape, threatening them with weapons, and repeatedly demanding money from them.  They forced the youngest son to lead them to the attached garage and threatened to kill him if the neighbor, Jiminez, did not open the door.  Upon gaining entry, the intruders also demanded money from Jiminez and took her cell phone and gold jewelry.  The police arrived shortly after the intruders left the garage where Jiminez lived.  They quickly apprehended one co-conspirator on a nearby street and used his cell phone call history to identify petitioner Plancarte.  Investigators subsequently arrested petitioner.  During interrogation, Plancarte confessed to being the getaway driver for the intruders, claiming he waited at a nearby 7-Eleven while his co-conspirators committed the robbery.

As grounds for federal habeas relief, petitioner alleges: (1) his conviction was based on his coerced confession; (2) his defense counsel provided ineffective assistance by failing to assert that an interrogating officer threatened to punish his son if he did not confess, failing to present a professional Spanish language interpreter as an expert witness to testify that he may have confessed to burglary instead of robbery, and failing to file a *Pitchess* motion to obtain the interrogating officers' personnel files to corroborate his claim that he was threatened; (3) his conviction for robbery in concert was not supported by sufficient evidence; (4) the trial court violated his due process right to have the jury decide every element of the offense by erroneously instructing the jury that robbery is a general intent crime; and (5) his false imprisonment conviction, based on the natural and probable consequences doctrine, was tainted by the erroneous jury instructions on the robbery offense.

**LEGAL STANDARD**

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which allows a federal district court to consider a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28. U.S.C. § 2254(a). Under the AEDPA, a district court may grant a petition for habeas relief only if the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Greene v. Fisher*, 132 S. Ct. 38, 44 (2012). The first prong applies both to questions of law and to mixed question of law and fact. *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09 (2000). The second prong applies to questions of fact. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Id.* at 340.

AEDPA imposes a highly deferential standard when reviewing state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(per curiam). The question under AEDPA is whether the state court's determination was objectively unreasonable, not whether that decision was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This unreasonableness determination is meant to be a high threshold, which is difficult to meet because "the purpose of the AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene*, 132 S. Ct. at 43. A state court decision is "unreasonable" under § 2254(d)(1) where it correctly identifies the governing Supreme Court holding but unreasonably applies it to the facts of the case at hand. *Williams (Terry)*, 529 U.S. at 413. Moreover, a state court decision is contrary to Supreme Court authority under § 2254(d)(1) where the court "arrives at a conclusion opposite to that reached by the

1   [Supreme] Court on a question of law or if the state court decides a case differently than the

2   [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412–13.

3                                **DISCUSSION**

4       1.  Confession

5          The voluntariness of a confession is a legal question, which merits independent

6   consideration in a habeas corpus proceeding. *Miller v. Fenton*, 474 U.S. 104, 116 (1985).  A

7   federal habeas court must review de novo the state court's finding that a confession was

8   voluntary but the court's subsidiary factual conclusions are entitled to a presumption of

9   correctness. *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990); *Rupe v. Wood*, 93 F. 3d

10  1434, 1444 (9th Cir. 1996).  The Fourteenth Amendment prohibits the admission of involuntary

11  confessions in state criminal cases. *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960).  In

12  evaluating whether a confession is voluntary, the court considers the totality of circumstances,

13  including the "characteristics of the accused and the details of the interrogation." *Schneckloth v.*

14  *Bustamonte*, 412 U.S. 218, 226 (1973).  The test asks whether, "considering the totality of the

15  circumstances, the government obtained the statement by physical or psychological coercion or

16  by improper inducement so that the suspect's will was overborne." *United States v. Leon*

17  *Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)(citing *Haynes v. Washington*, 373 U.S. 503, 513–

18  14 (1963)).  In order to determine that a confession was not voluntary within the meaning of the

19  Due Process Clause of the Fourteenth Amendment, the court necessarily must find that the police

20  used coercive tactics to undermine the suspect's free will. *See Henry v. Kernan*, 197 F.3d 1021,

21  1026–27 (9th Cir. 1999); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

22          In this case, petitioner claims his conviction was based on a coerced confession.  In

23  support of this contention, petitioner points to the fact that he was handcuffed and interrogated

24  alone in a police station room by two police officers, at least one of whom was armed.  Petitioner

25  claims the coercive nature of these conditions was exacerbated by the fact that he is an illiterate

26  non-citizen who does not speak English.  In addition, petitioner points to the recording of the

27  interrogation wherein one of the police officers told him if he failed to tell the truth "life has

28

1    ended." (Opinion, p. 19). The state appellate court determined that petitioner's confession was

2    voluntary under the totality of circumstances.

3            Habeas relief is not warranted here. Petitioner has not shown his confession was

4    involuntary. Petitioner was read his *Miranda* rights before the police officers began questioning

5    him, ensuring that he knew he could refuse to speak to the police officers. Although petitioner

6    was handcuffed and questioned alone in a room with two police officers, one of whom he claims

7    was armed, he was permitted to use the bathroom, was offered and given food and water, and

8    was escorted outside of the building so he could smoke cigarettes. The fact that he was

9    handcuffed is a factor to be considered in a voluntariness assessment but it is not singularly

10   determinative. *See People v. Williams,* 16 Cal. 4th 635, 661 (1997)(no single factor is

11   dispositive); *see also Withrow v. Williams*, 507 U.S. 680, 688–89 (1993). Although petitioner

12   claims that one of the officers was armed, the appeal court found "there was no evidence that

13   either officer was visibly armed."

14           Petitioner's contention that the interrogation conditions were especially coercive because

15   he is illiterate and does not speak English is equally unpersuasive. The interrogation was

16   conducted in Spanish by a certified bi-lingual police officer. Petitioner was read his *Miranda*

17   rights and there is no indication his illiteracy impacted his ability to understand his rights.

18   Petitioner does not claim he did not understand the questioning or was otherwise confused by his

19   inability to speak English or read or write. Moreover, absent a finding of coercion, the personal

20   characteristics of the suspect are irrelevant. *See e.g., United States v. Huynh*, 60 F.3d 1386, 1388

21   (9th Cir. 1995)(cultural background did not make the defendant incapable of free and voluntary

22   choice).

23           Petitioner's contention that the officers' statement that "life is ended" if he did not tell the

24   truth is equally uncoercive. The California Court of Appeal found:

25   The sargeant's testimony indicated that the remark was neither a threat of harsher
     punishment if defendant Plancarte did not confess to robbery nor a promise of
26   greater leniency if he did. Rather, the gist of the remark appears to be that, absent
     the "truth," life as defendant Plancarte knew it would end, which would seem to
27   imply that the police already had a convincing case against defendant Plancarte
     unless the "true" facts put things in a different light. . . . Although defendant

Plancarte claimed he felt threatened, he did not testify that, at the time of the interview, he took the statement literally . . . Defendant did not indicate that this statement had any causal connection to his decision to later confess.

(Ex. C at 19).  The interrogating officers' testimony gives context to the statement "life is ended," explaining it was meant to inform petitioner that robbery was a serious offense and his criminal actions had changed the course of his life.  This is merely an acknowledgement that his actions had consequences, not a threat or a promise.  "Mere advice or exhortation by the police that it would be better for the accused to tell the truth, when unaccompanied by either a threat or a promise does not . . . make a subsequent confession involuntary."  *People v. Jimenez*, 21 Cal.3d 595, 611 (1978); *see also United States v. Haswood*, 350 F.3d 1024, 1029 (recitation of potential penalties or sentences, including the potential penalties for lying to the interrogator is not coercive).

An independent review of the record upholds the appeal court's finding that the police officers did not use coercive interrogation tactics.  Petitioners' admission of involvement in the robbery was voluntary under the totality of circumstances.

2.  Assistance of Counsel

Petitioner claims defense counsel provided ineffective assistance by (1) failing to assert one of the interrogating police officers threatened to punish his son if he did not confess; (2) failing to present Spanish language expert testimony that he may have confessed to burglary rather than robbery; and (3) failing to file a *Pitchess* motion to obtain discovery of the interrogating officers' personnel files to support his claim that the officers threatened him.

The Sixth Amendment right to counsel guarantees not just assistance of counsel, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In determining whether counsel was ineffective, a court looks to whether counsel's conduct undermined the adversarial process such that the result cannot be relied upon.  *Id.*  A finding of ineffectiveness requires petitioner to demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under prevailing processional norms and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

1   would have been different." *Id.* at 964.  A reasonable probability is one that is sufficient to

2   undermine confidence in the outcome.  *Id.*

3           The first prong of the *Strickland* analysis is highly deferential, restricting the court's

4   inquiry to whether counsel's choices were reasonable and prohibiting "*post hoc* rationalizations

5   for counsel's decisionmaking . . . ."  *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011); *see also*

6   *id.* at 791 ("an attorney may not be faulted for reasonable miscalculation or lack of foresight or

7   for failing to prepare what appear to be remote possibilities").  The second prong of the

8   *Strickland* analysis requires petitioner to demonstrate that counsel's errors were so serious as to

9   deprive him of a fair trial, the result of which was reliable.  *Strickland*, 466 U.S. at 688.  This test

10  for prejudice requires a court to question "whether there is a reasonable probability that, absent

11  the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

12          "Unreliability or unfairness does not result if the ineffectiveness of counsel does not

13  deprive the defendant of any substantive or procedural right to which the law entitles him."

14  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A court does not need to examine whether

15  counsel's performance was deficient before determining whether petitioner suffered prejudice as

16  a result of counsel's alleged deficiencies.  *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th

17  Cir. 1995)(endorsing a district court's refusal to consider whether counsel's conduct was

18  deficient after determining that petitioner could not establish prejudice), *cert denied*, 516 U.S.

19  1124 (1996).

20          Under AEDPA, the question is "whether the state court's application of the *Strickland*

21  standard was unreasonable.  This is different from asking whether defense counsel's

22  performance fell below *Strickland's* standard . . . . A state court must be granted a deference and

23  latitude that are not in operation when the case involves review under the *Strickland* standard

24  itself."  *Harrington v. Richter,* 131 S. Ct. at 785.  This results in a "doubly deferential" standard

25  of habeas review by the federal court.  *Knowles v. Mirayance*, 129 S. Ct. 1411, 1420 (2009).

26

27

28

a. Counsel's alleged failure to advance indicators of coercion

Petitioner contends that defense counsel did not present all indicators of coercion when she failed to assert that one of the interrogating officers threatened to arrest petitioners' son if he did not confess. The state court summarily denied petitioners' habeas petition, which raised this claim. Despite this summary denial, petitioner must still show that there was no reasonable basis for the court to deny relief. *Harrington v. Richter*, 131 S. Ct. at 784 ("where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim is found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."). As discussed above, petitioners' confession was not coerced. As to ineffective assistance, petitioner nonetheless points to the transcript of his confession, which reads:

> Detective Nieves: . . . . The only other thing I can think, is that Daniel is also part of this. Your son. If there is a son.
>
> Mr. Castillo:[1] No. Not my son. No. Not my son.
>
> Detective Nieves: I am going to have to investigate and if he looks as he is a suspect, I am going to have to put him under punishment.

Petitioner contends that this clearly shows the officer threatened to arrest his son, implying if petitioner confessed he [the officer] would protect his son from "punishment." When reviewed in the context of the full investigation, however, the statement appears less than coercive. Petitioner had revealed a great deal of information regarding the robbery, including details that only a participant would know. In addition, petitioner called his son after the robbery, prompting his son to hire an attorney, who then called the interrogating officer to schedule a meeting. The full transcript of the interrogation reveals as much:

---

[1] Petitioner provided detectives with the name "Castillo" upon his arrest, resulting in the name discrepancy in the transcripts of the interrogation.

Detective Nieves: I am going to tell you something, and that is what is going to send you to prison.

Mr. Castillo: No.  No.  No.

Detective Nieves:  These are your phone calls.  These are the calls from your telephone.

Detective Nieves:  Do you think that when I go talk to this boy tomorrow, do you think he is not going to tell me what I want to know?  He called me.  His attorney called me.  I did not call him.

Mr. Castillo: I am going to tell you the truth.

Detective Nieves:  He is going to tell me the truth?  What is he going to tell me about you?

Mr. Castillo: What I am telling you.

Detective Nieves:  No.  No.  No.  You know what?  I feel like going over to visit him now.  Feel like right now.  So you can stay here and when I come back it will be the end.  Already be the end for you now.  The only other thing I can think, is that Daniel is also part of this.  Your son.  If there is a son.

Mr. Castillo: No.  Not my son.  No.  Not my son.

Detective Nieves:  I am going to have to investigate and if he looks as he is a suspect, I am going to have to put him under punishment.

Mr. Castillo:  Yes, as I told you, my son doesn't have anything to do with this.

This dialogue, in conjunction with the facts of the case, present a reasonable basis on which the court could have denied relief.  *See e.g., Ortiz v. Uribe*, 671 F.3d 863, 872 (2011)(reminding a suspect of his obligation to tell the truth and that his children were counting on him to do the right thing was a permissible psychological appeal to his conscience, even if it acted to make him more emotional during the interrogation); *cf. Brown v. Horell*, 644 F.3d 969, 979–81 (9th Cir. 2011)(finding the interrogator coerced petitioner into confessing "by conditioning his ability to be with his child on his decision to cooperate with the police").  Accordingly, the state court's application of the *Strickland* standard was not unreasonable.

b.  Counsel's alleged failure to present expert testimony

Petitioner claims defense counsel was ineffective because she failed to present Spanish language expert testimony, which he claims would have shown the word he used to confess to robbery could also be translated to mean burglary.  Petitioner further argues that had counsel properly introduced this expert testimony it would have created a strong reason to doubt his guilt, bringing into question whether he knew, and intended to assist, the perpetrators' use of force and fear to take property.  The California Supreme Court summarily denied petitioner's claim.

In support of his contention, petitioner points to Exhibit 2 of his petition for writ of habeas corpus in the California Court of Appeal.  Exhibit 2 is a declaration of Yolanda Velesco-Haley, a certified Spanish-English interpreter.  Velesco-Haley's petition states the Spanish word "robar" can be translated to mean either to rob or to burglarize.  She goes on to opine that robar therefore refers "to the unlawful takings of property both in cases in which the perpetrator uses force or the threat of force to take the property and in cases in which the perpetrator neither uses force nor threatens to use force to take the property."  (Ex. 2 at 2–3).

Where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel.  *See Wilson v. Henry*, 185 F. 3d 986, 990 (9th Cir. 1999).  It is clear the evidence in this case did not warrant calling a Spanish language expert.  While the word "robar" itself, can refer to either robbery or burglary, there is little question that petitioner's usage in his confession referred to robbery, not burglary.  Petitioner admitted to agreeing to be the getaway driver, knew of the home invasion, and gave details that only someone who was involved in the robbery would know.  These facts by themselves are sufficient to support the state court's ruling.  Petitioner does not establish that counsel's decision not to present a Spanish language expert to testify as to the ambiguity of the translation prejudiced him.  There is no reasonable likelihood the jury would have acquitted petitioner over this ambiguity in light of the other evidence presented at trial.  Accordingly, there is a reasonable basis upon which the state court's ruling could be based.

1          c.   Counsel's alleged failure to bring a *Pitchess* Motion

2          Petitioner alleges that the police officers who interrogated him threatened him and struck

3   him in order to coerce his confession.  Petitioner contends that defense counsel was ineffective

4   for failing to file a *Pitchess* motion to obtain the interrogating officers' personnel files in order to

5   corroborate his allegation.  The California Court of Appeal rejected petitioner's argument,

6   finding:

7

8          Defendant acknowledges that it is impossible to establish the prejudice prong of
          an ineffective assistance claim since the outcome of *Pitchess* discovery cannot be

9          known . . . .We cannot, as suggested on appeal, disregard the prejudice prong of
          an ineffective assistance claim simply because the argument is that defense

10         counsel should have brought a *Pitchess* motion . . . . There is nothing in the record
          to suggest that a *Pitchess* discovery motion would have led to any corroborating

11         evidence.  Defendant Plancarte has not established this ineffective assistance
          claim.

12

13  (Ex. C at 25–26).

14         In order to establish prejudice from failure to file a motion, petitioner must show that (1)

15  had his counsel filed the motion, it is reasonable that the trial court would have granted it as

16  meritorious, and (2) had the motion been granted, it is reasonable that there would have been an

17  outcome more favorable to him.  *See Wilson v. Henry*, 185 F. 3d 968, 990 (9th Cir. 1999).  The

18  record does not show that either officer had any prior misconduct in his record.  Petitioner does

19  not establish it is a reasonable possibility that the trial court would have granted the motion.

20  Moreover, it is merely speculative to assert that if the motion had been granted it would have

21  revealed any information about that officers' history, which would have corroborated his

22  allegations.  Accordingly, the state court was not objectively unreasonable in its application of

23  the *Strickland* standard.

24      3.   Conviction for Aiding and Abetting Robbery In Concert

25         Petitioner claims there was no substantial evidence that he aided and abetted the robbery,

26  in concert, of the Maraz family.  Petitioner contends the intended victims were drug dealers who

27  lived in a garage attached to the Maraz family's home.  Petitioner argues "[t]he evidence showed

28

1    that Petitioner knew of and intended only to aid in a plan to rob the residence of a drug dealer . . .

2    . The first residence entered by the perpetrators, that of the Maraz family, manifestly had not

3    been targeted by the principals, and therefore necessarily was not the robbery Petitioner intended

4    to aid and abet." (Ex. D at 23–24).  Petitioner contends his confession, wherein he admits to

5    agreeing to be the getaway driver in the robbery of a drug deal, only supports that he intended to

6    aid and abet the robbery of a drug dealer.  Alternatively, petitioner contends that if the evidence

7    demonstrates he intended to aid and abet the robbery of Mr. Marza, then the robbery of the

8    Jiminez family's home must be reversed because there would then be insufficient evidence

9    petitioner intended to assist in the second robbery.

10        The California Court of Appeal rejected petitioner's argument:

12        The evidence does not demonstrate that defendant Plancarte or the perpetrators
        intended to take the money only if it was found in the sole possession of the drug
13        dealer . . . . Even if we were to accept that either the robber in concert of Maraz or
        the robbery of Jiminez was not the target robbery, the evidence was factually
14        sufficient to convict defendant Plancarte of those crimes as an aider and abettor
        under the natural and probable consequences doctrine.

16   (Ex. C. at 26).

17        The Due Process Clause "protects the accused against conviction except upon proof

18   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

19   charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A federal court reviewing a state court

20   conviction does not determine whether it is satisfied that the evidence established guilt beyond a

21   reasonable doubt but instead "determines only whether, 'after viewing the evidence in the light

22   most favorable to the prosecution, any rational trier of fact could have found the essential

23   elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.

24   1992)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319(1979)).  A due process violation only

25   occurs where no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

26   *Jackson*, 443 U.S. at 324.  All evidence admitted at trial must be considered in the light most

27   favorable to the prosecution.  *See McDaniel v. Brown*, 130 S. Ct. 665, 673–74 (2010).

28   Moreover, under the *Jackson* standard of review, a jury's credibility determinations are entitled

No. C 12-3304 RS
ORDER DENYING PETITION

to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012).  A federal court can only overturn a state court decision rejecting a petitioner's sufficiency of the evidence challenge where the state court decision is objectively unreasonable.  *Id.*

Under California law, an individual aids and abets the commission of a crime when he, knowing the unlawful purpose of the primary perpetrator, and with intent or purpose to commit, facilitate, or encourage the commission of the crime, acts or promotes the commission of said crime. *People v. Cooper*, 53 Cal. 3d 1158, 1164 (1991).  An aider and abettor is guilty of the particular crime for which he assists and is also responsible for the natural and reasonable consequences of that crime. *People v. Beeman*, 35 Cal. 3d 547, 560 (1984).

A reasonable person would foresee that the robbery of a residential property at 2:30 in the morning would involve waking residents and taking their property by force or fear.  Generally, it is reasonably foreseeable that the commission of a robbery is likely to involve the commission of other, equally serious, offenses.  The fact that petitioner did not know the Mazar family lived in the main residence nor intend to rob them is irrelevant.  By aiding and abetting the robbery of a drug dealer, petitioner effectively also aided and abetted in the robbery, in concert, of the Mazar family.  Accordingly, the state court's conclusion is not objectively unreasonable and habeas relief is not appropriate here.

4.   Jury Instruction

a.   Robbery Instruction

Petitioner contends the trial court erred by instructing the jury that robbery is a general intent crime.  He claims this error deprived him of his due process right to have a jury find every element of an offense proven beyond a reasonable doubt.

A challenge to a jury instruction solely as an error under state law is not a cognizable claim in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). To obtain federal collateral relief for errors in a jury charge, petitioner must show that the

For the Northern District of California

instruction by itself so infected the entire trial that the resulting conviction is a violation of due process.  *Id.* at 72; *see also Donnelly v. Dechristoforo*, 416 U.S. 637, 643 (1974)("[I]t must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some [constitutional right].").  To determine whether there was a violation of due process, a court must ask whether there is a reasonable "likelihood" the jury misapplied the instructions.  *Estelle*, 502 U.S. at 62.  The challenged instruction should be considered in the context of the entirety of the jury instructions, evidence introduced at trial, and the arguments of counsel, as these additional factors may clarify the charge to the jury.  *Id.*; *see also Middleton v. McNeil*, 541 U.S. 433, 438 (2004)(per curiam).  A habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).  This requires petitioner to establish the error resulted in actual prejudice.  *Id.*

The California Court of Appeal agreed the trial court erred by labeling the jury instruction for robbery as a general intent crime, but ultimately found the error did not result in prejudice.  The court found:

> The robbery instruction made clear that the People had to prove that force or fear was used to take property with the intent to deprive the owner of it permanently. . . . The prosecutor argued in closing that property was taken from both victims with the intent to keep it.  It is not reasonably likely that the juror understood the instruction mislabeling the robbery offenses as crimes of 'general intent,' a legal term of art, as meaning the prosecution did not have to prove intent to permanently deprive as an element of robbery. . . . Moreover, even if the instructions mislabeling the charged robbery offenses as crimes of 'general intent' was a contradictory instruction that created a risk that the jury failed to find the specific intent element of robbery, the instructional error was harmless beyond a reasonable doubt under the *Chapman* standard.

(Ex. C at 33).  Review of the erroneously labeled robbery instruction in the context of the rest of the jury instructions, the evidence, and counsel's argument, reveals there was no constitutional error.  The error did not impact the verdicts as the robbery instructions themselves explicitly

1    stated the jury must find the property was taken with the intent permanently to deprive the

2    victims of said property.  Neither counsel argued robbery was a general intent crime and the

3    evidence established the perpetrators acted with specific intent.  Accordingly, the state court's

4    ruling is not an unreasonable application of the clearly established law of the United States

5    Supreme Court.

6                   b.   False Imprisonment Conviction

7          Petitioner claims his conviction for false imprisonment must also be reversed because it

8    was predicated on the jury's finding that petitioner committed robbery, a finding which he argues

9    is unreliable due to the jury instruction error discussed in the previous section.  The California

10   Court of Appeal rejected petitioner's argument, stating:

12          As already explained, the instructional error with regard to the specific intent
            required for robbery was harmless beyond a reasonable doubt. . . . Defendant does
13          not identify any error in the aiding and abetting instructions or the natural and
            probable consequences instructions or the false imprisonment instructions.  The
14          erroneous general intent instruction did not taint those instructions or render
            unreliable the jury's finding that defendant Plancarte was guilty of false
15          imprisonment under the natural and probable consequences doctrine.

16   (Ex. C at 34).  As discussed in the previous section, the general intent labeling error of the

17   robbery instruction did not result in prejudice to petitioner, thus foreclosing any of petitioner's

18   derivative claims.  The record reveals that the evidence, which shows petitioner aided and

19   abetted in the commission of false imprisonment, is strong.  Petitioner agreed to be the getaway

20   driver for the robbery of a house in a residential neighborhood at 2:30 am.  Petitioner knew the

21   robbers were armed and should have reasonably known they would be prepared to use their

22   weapons in commission of the robbery. Accordingly, the state court's ruling that the false

23   imprisonment conviction was not tainted as a result of the error in the robbery jury instruction

24   was objectively reasonable.

25

26

27

28

**CONCLUSION**

Based on the foregoing, the Petition for Writ of Habeas Corpus is denied.


IT IS SO ORDERED.

DATED:  4/18/4

_____
RICHARD SEEBORG
United States District Judge

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the Northern District of California

No. C 12-3304 RS
ORDER DENYING PETITION